**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-03028-REB

JENNIE LEE CORRAL,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed January 7, 2014, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of fibromyalgia, degenerative disc disease, depression, and anxiety. After her application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on March 5, 2013. At the time of this hearing, plaintiff was 60 years old. She has a 10th grade education and past relevant work experience as a cashier,

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

cook, and small parts assembler. She has not engaged in substantial gainful activity since August 22, 2010, her alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found plaintiff had the residual functional capacity to perform a range of light work with certain postural limitations which required only simple, routine tasks. As this residual functional capacity was consistent with the all the demands of plaintiff's past relevant work, the ALJ found plaintiff not disabled at step four of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that

the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff presents eight putative assignments of error in a brief that comprises a mere 15 pages. As may be readily apparent from the simple mathematics of that observation, many of her arguments are woefully underdeveloped.[2] The local civil rules

---

[2] One is comprised of but a single sentence.

of this district specifically require that "a motion involving a contested issue of law shall be . . . supported by a recitation of legal authority in the motion," **D.C.COLO.LCivR** 7.1(d), and the court thus is neither required nor inclined to consider inadequately briefed arguments, *see Denunez v. Colvin*, 2013 WL 1873284 at *3 n.3 (D. Colo. May 6, 2013). By the same token, a party's failure to point the court to evidence in the record which supports its motion creates no duty in the court to make that party's case for it. *See Abdelmeged v. Colvin*, 2015 WL 5047645 at *6 (D. Colo. Aug. 26, 2015) ("This court is neither required nor inclined to scour the record in search of evidence to support a party's arguments, and declines plaintiff's implicit invitation to do so here."). Thus plaintiff's failure to adequately develop her arguments is sufficient in itself to warrant denial of relief.

Yet even considering plaintiff's arguments substantively, they are without merit. The majority of her assignments of error can roughly be grouped into three broader categories: (1) a challenge to the ALJ's determination of her credibility (alleged Errors Four and Seven); (2) a challenge to the judge's residual functional capacity assessment (alleged Errors Two, Six, and Eight; and (3) a related challenge to the weight assigned to the opinions of plaintiff's treating doctor and a consultative examiner (alleged Errors Three and Five).[3] None suggests reversible error in the ALJ's decision in this case.

Plaintiff claims the ALJ erred in discrediting her subjective reports of pain and

---

[3] By her alleged Error One, plaintiff also argues the ALJ erred in failing to apply the Commissioner's Medical-Vocational Guidelines (the "Grids"), which she claims conclusively direct a finding of disability given her age, education, skills, and residual functional capacity. This argument misconstrues the nature and proper role of the Grids. "Legally, the grids are irrelevant at step four, because they relate to vocational factors that the Secretary does not consider until step five." *Shields v. Chater*, 1996 WL 80386 at *2 (10th Cir. Feb. 26, 1996). *See also Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012); *Fetters v. Commissioner of Social Security*, 2005 WL 3479650 at *1 (6th Cir. Dec. 21, 2005).

other functional limitations. In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). The ALJ here gave clear, specific, legitimate reasons linked to specific evidence in the record for his credibility assessment. He noted that plaintiff's alleged date of onset corresponded not to any change in her own medical condition but to the date she quit her job in order to care for her gravely ill daughter, who died not long thereafter. (Tr. 56; *see also* Tr. 333, 338.) *See also* 20 C.F.R. § 404.1566(c); *Tackett v. Colvin*, 2013 WL 2038917 at *4 (D. Or. May 14, 2013) (""When a claimant stops working for reasons other than disability, it supports an adverse inference as to the credibility of her claim that she could not continue working due to disability."). He also found that despite a more recent exacerbation, plaintiff's pain generally was controlled with medication and that she "consistently demonstrated few objective limitations from her impairments" (Tr. 56), a finding that he substantiated with a thorough and accurate discussion and analysis of the record evidence (Tr. 57).

The ALJ also gave adequate, evidence-based reasons for discrediting plaintiff's subjective complaints as to the allegedly disabling effects of her mental impairments. Plaintiff claims the ALJ erroneously found that she first complained of symptoms to her primary care provider some ten months after her alleged date of onset (Tr. 56, 301), pointing out that she reported depression and anxiety to her doctor in March and June 2010 (Tr. 305-306). Plaintiff misreads the ALJ's statements in this regard, however, as

he plainly was referring to plaintiff's complaints of lower extremity pain, not her mental impairments. (Tr. 57.)

Moreover, plaintiff does not explain how any alleged misstatement in this regard was consequential. *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir.1988); *Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1044 (D. Colo. 2015). As a result of her June 2010 consultation, plaintiff was prescribed Lyrica for anxiety (Tr. 305), the dosage of which was increased just a few days later when plaintiff continued to report difficulty sleeping due to anxiety (Tr. 303-304). Plaintiff had no further complaints of mental health issues for nearly a year, when she requested a referral for counseling, admitting that she had ignored prior recommendations to attend counseling. (Tr. 301.) Two months later, she was reported to be "doing well" and continuing with grief counseling. (Tr. 359.) It therefore appears that plaintiff's impairments responded to treatment, a conclusion which undermines any suggestion of disability. *See Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991).

Plaintiff also suggests the ALJ overstated her activities of daily living, social functioning, and ability to concentrate. In considering the "paragraph B" criteria at step three of the sequential analysis, the ALJ determined that plaintiff's had only mild restrictions in her activities of daily living and social functioning, and moderate difficulties with concentration, persistence, and pace. (Tr. 54.) Yet plaintiff does not challenge the ALJ's step-three conclusion that her mental impairments were not presumptively

disabling, and I am not persuaded that these findings were erroneous[4] or, assuming *arguendo* any error occurred, that it undermined the ALJ's determination of plaintiff's mental residual functional capacity at step four.  The ALJ gave adequate, well-substantiated reasons for his conclusion as to the effects of plaintiff's alleged mental impairments on her work-related functioning, noting particularly the situational nature of her symptoms and the relatively limited, conservative treatment plaintiff received for them.[5]  (Tr. 58.)  I thus perceive no reversible error in this regard.

With regard to the ALJ's residual functional capacity assessment specifically, plaintiff is simply mistaken that the judge's determination is infirm because it does not correspond to the opinion of one or more medical sources.  "Although the ALJ's [residual functional capacity] determination must be grounded in some medical evidence, it ultimately is an administrative determination reserved to the Commissioner." **Zagorianakos**, 81 F.Supp.3d at 1044-45 n.10 (internal citations omitted).  **See also** 20 C.F.R. § 1516.946; **Rutledge v. Apfel**, 230 F.3d 1172, 1175 (10th Cir. 2000).  Because the finding thus is an administrative, not a medical, one, the ALJ is "not required to adopt or rely on any medical source opinion in making [his] residual functional capacity assessment[.]"  **Lumpkin v. Colvin**, 112 F. Supp. 3d 1169, 1172 (D. Colo. 2015) (citation and internal quotation marks omitted; alteration in original).  "Instead, residual

---

[4] To the extent plaintiff claims error because these findings are contrary to her own statements as set forth in her Function Report submitted in connection with her application for benefits (*see* Tr. 261-268), she assumes what she would seek to prove (i.e., that her statements are in fact credible).

[5] To the extent the ALJ relied on his personal observations of plaintiff during the hearing as a basis for determining whether she exhibited social functioning or concentration restrictions, his findings were not based *solely* on such observations, which are appropriately considered among other relevant factors in assessing residual functional capacity.  **Social Security Ruling** 96-8p, 1996 WL 374184 at *7 (SSA July 2, 1996).

functional capacity is assessed based on all of the relevant medical and other evidence, including medical records, observations of treating physicians and others, and plaintiff's own description of [her] limitations." *Id.* (internal citations and quotation marks omitted). Thus no error, much less reversible error, occurred in this regard either.

     Nor did the ALJ fail to adequately substantiate his conclusion that plaintiff can return to her past relevant work. Plaintiff's argument in this regard is so wholly obtuse as to defy analysis. While plaintiff cites to relevant standards governing the ALJ's consideration of a claimant's past relevant work, she fails to explain specifically how the ALJ's decision contravenes them in this instance. I see nothing to suggest that it did. The ALJ solicited the opinion of a vocational expert at the hearing, who classified plaintiff's past relevant work under the *Dictionary of Occupational Titles* and, after a thoughtful and detailed discussion with the ALJ, confirmed that a person with plaintiff's residual functional capacity could perform those jobs. (Tr. 96-103.) That determination therefore is supported by substantial evidence.

     Finally, plaintiff complains of the ALJ's decision to discount the medical opinions of her treating source and a consultative examiner. I find no such error. Plaintiff's primary care physician, Dr. Joseph Corona, completed a "General Residual Functional Capacity Questionnaire and a "Sleep Disorders Residual Functional Capacity Questionnaire" on her behalf in November 2011, in which he endorsed significant exertional, postural, and environmental restrictions on plaintiff's ability to perform work-related functions. (Tr. 434-436, 442-443.) The ALJ gave these opinions "little weight,"

noting improvements in plaintiff's condition after the date of Dr. Corona's opinions[6] and finding his suggested restrictions inconsistent with the objective findings of record, including his own treatment of plaintiff.  (Tr. 59.)

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source opinion may not be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.  *Watkins*, 350 F.3d at 1301.  Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

Plaintiff's bare argument to the contrary notwithstanding, the ALJ here more than adequately substantiated his conclusion that Dr. Corona's opinions were inconsistent with the objective evidence of record.  The ALJ thoroughly recounted the record evidence, which consisted of largely normal or minimal findings on examinations and

---

[6] Plaintiff also claims the ALJ mischaracterized the record by suggesting that plaintiff was off all pain medication in February 2012 (*see* Tr. 411), when in fact she continued to take gabapentin for pain (Tr. 417).  In recounting the evidence, the ALJ accurately stated that plaintiff reported ceasing all pain medication in February 2012, but noted specifically that she continued to take gabapentin thereafter, which provided some relief.  (Tr. 57.)  However, in discussing the weight he afforded to Dr. Corona's opinions, the ALJ did seem to suggest without qualification that plaintiff took no further pain medications after February 2012.  (*See* Tr. 59.)  Any error in this regard, however, undoubtedly was harmless.  *Bernal*, 851 F.2d at 303; *Zagorianakos*, 81 F.Supp.3d at 1044.  As discussed above, the ALJ give other, entirely adequate reasons for discounting Dr. Corona's assessment of plaintiff's functional abilities.  Moreover, the ALJ's observation that plaintiff's symptoms improved thereafter, while perhaps a bit overstated, was supported by the record.  (*See* Tr. 417 (wherein plaintiff reported "some relief of symptoms" with gabapentin).)

testing. (Tr. 57.) Where, as here, the ALJ has given specific, legitimate reasons tied to the evidence of record for the weight he assigns a treating source opinion, the disability determination is not subject to reversal simply because he assigns little weight that opinion.[7]

Nor do I perceive any reversible error in the ALJ's decision to give little weight to the September 2011 opinion of the consultative examiner, Dr. Joyce Ackerman. (Tr. 338-343.) His conclusion that Dr. Ackerman's findings were wholly disproportionate to the rest of the objective evidence is thoroughly borne out by his thoroughgoing discussion of the evidence of record. Moreover, the ALJ noted that just two weeks prior to her appointment with Dr. Ackerman, plaintiff had reported to Dr. Corona that she was sleeping better, attending grief counseling, and doing better on medication. (Tr. 58-59, 359-360.) Although better practice may have counseled against attempting to guess at the reason for these disparities, the marked difference between plaintiff's reported condition as contemporaneously reported to Dr. Corona and her presentation to Dr. Ackerman reasonably supports the ALJ's conclusion that Dr. Ackerman's findings did not reflect a longitudinal picture of plaintiff's true level of functioning. Nothing in that determination admits of reversible error, either.

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through

---

[7] Plaintiff's citation to the December 2011 report of Dr. Greg Reichardt finding that plaintiff exhibited all 18 trigger points associated with fibromyalgia (Tr. 380-383) does not undermine the ALJ's assessment of the supportability of Dr. Corona's opinions. The bare fact of diagnosis, standing alone, is insufficient to establish disability. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *Burger v. Astrue*, 2013 WL 1222371, at *5 (D. Colo. March 26, 2013). Moreover, here again, the ALJ noted that plaintiff's condition improved just a few months after Dr. Reichardt's examination, which post-dated Dr. Corona's opinions in any event. (Tr. 57.)

the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated March 25, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge